**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____
                                          )
JOHN A. FORD,                             )
                                          )
                    Plaintiff,            )
                                          )
          v.                              )          Civil Action No. 15-0808 (BAH)
                                          )
DEPARTMENT OF JUSTICE, *et al.*,          )
                                          )
                    Defendants.           )
_____ )

<u>**MEMORANDUM OPINION**</u>

The plaintiff, John A. Ford, filed this action under the Freedom of Information Act

("FOIA"), 5 U.S.C. §552, demanding that the United States Department of Justice ("DOJ"), the

Federal Bureau of Investigation ("FBI") and the Executive Office for United States Attorneys

("EOUSA") "hand over records concerning Plaintiff," in response to his multiple FOIA requests,

Compl. at 1, ECF No. 1, and that the FBI amend records maintained in its Central Records

System ("CRS"), pursuant to the Privacy Act, 5 U.S.C. § 552a, *id.* at 13.  Pending before the

Court is the defendants' Motion for Summary Judgment, ECF No. 18, which, for the reasons

discussed below, is granted.

**I. BACKGROUND**

The plaintiff "is currently serving a 240 month sentence . . . after pleading guilty to one

count of bank robbery by violence, force, and intimidation in connection with the robbery of the

US Bank at 1586 North Rand Road, Palatine, Illinois on November 20, 2007."  Mem. of P. & A.

in Support of U.S. Dep't of Justice's Mot. for Summ. J. ("Defs.' Mem."), Decl. of David M.

Hardy ("First Hardy Decl.") ¶ 5.  In 2014 and 2015, the plaintiff submitted over ten FOIA requests to the FBI and EOUSA.  The searches conducted by the FBI and EOUSA and the responses provided to the plaintiff's requests are described below.

## A.    The Defendants' Searches for Responsive Records[1]

The plaintiff's multiple FOIA requests to the FBI "sought specific items from his investigative main file (91A-CG-128167) or associated sub[-]files."  First Hardy Decl.  ¶ 46. Since the plaintiff "identified the specific file number" in which responsive records would be located, the FBI's declarant states that staff "searched the CRS only to confirm the file at issue was [the] plaintiff's investigative file."  *Id.*  ¶ 45. The CRS "is an extensive system of records consisting of applicant, investigative, intelligence, personnel, administrative, and general files compiled and maintained . . . in the course of fulfilling [the FBI's] integrated missions and functions as a law enforcement, counterterrorism and intelligence agency to include performance of administrative and personnel functions."  *Id.*

The FBI's declarant described the agency's practice is "to search the [CRS] to determine if the FBI has records about a particular subject in response to most [FOIA] requests." *Id.*  Due to the nature of the plaintiff's requests for items, staff did not limit the search to CRS but also "retrieved the physical file, including sub-files[,] and manually search[ed] for the specific items" identified by the plaintiff in his requests.  *Id.* ¶ 46.  The declarant explained that

---

[1]     The plaintiff raises no objection or even reference in his opposition to the agencies' searches for responsive records. Based on the descriptions of the searches conducted set out in the defendants' declarations and summarized in the text, and absent any arguments from the plaintiff, the Court concludes that the FBI and the EOUSA conducted searches that were reasonably calculated to locate records responsive to the plaintiff's FOIA requests.  See *Weisberg v. Dep't of Justice*, 705 F.2d 1344, 1351 (D.C. Cir. 1983) ("The adequacy of an agency's search is measured by a standard of reasonableness and is dependent upon the circumstances of the case.") (internal quotation marks and citations omitted); *Iturralde v. Comptroller of the Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003) (stating that "the failure of an agency to turn up one specific document in its search does not alone render a search inadequate").

"the FBI was able to locate almost all of the specific items . . . requested," with the exception of "the item related to a dust mask[.]"  *Id.*

The EOUSA's search was likewise guided by the plaintiff's request. He indicated that his criminal trial took place in the Northern District of Illinois and, consequently, the EOUSA referred the matter to the United States Attorney's Office for that district ("USAO/ILN"), where its FOIA Contact conducted the search for records responsive to Requests 2012-3780, 2014-0292 and 2015-0316.  *See* Jolly Decl. ¶¶ 28, 30.  The search began with LIONS, a "computer tracking system used by United States Attorney's Offices to track cases and retrieve files pertaining to cases and investigations."  *Id.* ¶ 28.  Through LIONS, the declarant explained, "the user can access databases . . . to retrieve information based on a defendant's or individual's name, the USAO number (United States Attorney's Office's internal administrative number), and the district court case number."  *Id.*

On October 22, 2012, the FOIA Contact searched LIONS, the U.S. District Court, Northern District of Illinois, Case Management and Electronic Case Files (CM-ECF) database, an older database called PROMIS, and the USAO/ILN's microfiche file system using variations of plaintiff's name as search terms.  Defs.' Mem., Decl. of Sharon Getty ("Getty Decl.") ¶ 6.  She learned from these sources the caption and case number of plaintiff's criminal case and the lead Assistant United States Attorney ("AUSA") to whom the criminal case was assigned.  *Id.*  From the AUSA, the FOIA Contact "gather[ed] the requested records" and forwarded them to the EOUSA.  *Id.* ¶ 7.

Upon receipt of Request 2014-0292, the FOIA Contact searched the LIONS database system, the federal district court's CM-ECF database, PROMIS and microfiche at the USAO/ILN.  *Id.* ¶ 9.  She determined that this request "was the same request that [the plaintiff]

submitted in . . . Request No. 2012-3870," and that she had provided these records previously to the EOUSA.  *Id.* ¶ 10.  She searched the plaintiff's criminal case file and was unable to locate "the requested videos and video stills."  *Id.*   In addition, the FOIA Contact obtained from the lead FBI agent assigned to the matter "[five] potentially responsive pages that the FBI had in its possession relating to this request."  *Id.* ¶ 14.  Neither of the EOUSA's declarants was aware of any other location where responsive records likely would be located.  *Id.* ¶ 15; Jolly Decl. ¶ 28.

### B.    FOIA and Privacy Act Requests to the FBI

#### 1.  FOIPA Request Number 1260039-000

The plaintiff's many FOIA requests to the FBI all sought information related to the bank robbery for which he was convicted.  For example, the plaintiff requested videotapes and photos taken in and around the bank at or near the time of the robbery, *see generally* First Hardy Decl. ¶¶ 6, 12, and other evidence, such as latent prints, retrieved from the crime scene, *see id.* ¶¶ 9, 11.  These requests were combined and assigned a single tracking number, FOIPA Request Number 1260039-000.  *See id.* ¶¶ 7, 10.  The FBI responded by releasing nine pages out of 105 pages reviewed, after having withheld certain information under Exemptions 6, 7(C), and 7(E). *Id.* ¶ 14; *see id.*, Ex. I (Letter to plaintiff from David M. Hardy, Section Chief, Record/Information Dissemination Section, Records Management Division, FBI, dated September 29, 2014).  In addition, the FBI withheld in full "a CD containing . . . bank surveillance video material [under Exemption 7(E)]."  *Id.* ¶ 14.

The plaintiff administratively appealed the FBI's determination to the DOJ's Office of Information Policy ("OIP"), *see id.* ¶ 15, and the OIP affirmed, *id.* ¶ 17, explaining that "[t]he FBI properly withheld certain information because it is protected from disclosure under the

FOIA pursuant to [Exemptions 6, 7(C) and 7(E)]," *id.*, Ex. L (Letter to plaintiff from Sean R. O'Neill, Chief, Administrative Appeals Staff, OIP, dated February 23, 2015) at 1.

### 2.   FOIPA Request Number 1260039-001

The plaintiff's next request to the FBI pertained to a mask worn by the bank robber. *Id.* ¶ 18; *see id.*, Ex. M (Freedom of Information/Privacy Act Request dated October 26, 2014). He was advised that the FBI "was unable to identify main file records responsive to [this] request." *Id.* ¶ 19; *see id.*, Ex. N (Letter to plaintiff from David M. Hardy dated November 6, 2014). The plaintiff appealed, *see id.* ¶ 20, and the OIP affirmed the FBI's determination, *id.* ¶ 22; *see id.*, Ex. Q (Letter to plaintiff from Christina D. Trolani, Attorney-Advisor, Administrative Appeals Staff, OIP, dated February 19, 2015) at 1.

### 3.   FOIPA Request Number 1310417-000

The plaintiff sought records pertaining to latent fingerprints. *Id.* ¶ 23; *see id.*, Ex. R (Freedom of Information/Privacy Act Request dated October 29, 2014). The FBI responded by releasing 31 pages of records, having withheld certain information under Exemptions 6, 7(C), and 7(E). *Id.* ¶ 25; *see id.*, Ex. T (Letter to plaintiff from David M. Hardy dated December 19, 2014). Once again, the plaintiff submitted an administrative appeal to the OIP, *id.* ¶ 26, which affirmed the FBI's determination, *id.* ¶ 28; *see id.*, Ex. W (Letter to plaintiff from Sean R. O'Neill, Attorney-Advisor, Administrative Appeals Staff, OIP, dated April 14, 2015).

### 4.   FOIPA Request Number 1260039-002

The plaintiff's next submission to the FBI "reiterat[ed] his previous request for records related to a copy of a dust mask." *Id.* ¶ 29; *see id.*, Ex. X (Letter to David M. Hardy from plaintiff dated November 2, 2014). Although the FBI could not search its indices for a specific piece of evidence, it suggested that "the information [the plaintiff] sought may have been under

the purview of the [EOUSA]." *Id*. ¶ 30; *see id*. ¶ 48.  Accordingly, the FBI forwarded this

request to the EOUSA and notified the plaintiff of its action. *Id*. ¶ 30; *see id*., Ex. Y (Letter to

plaintiff from David M. Hardy dated December 1, 2014) at 1.  The plaintiff administratively

appealed this action, *id*. ¶ 31, and the OIP closed the appeal as duplicative of his prior appeal of

the FBI's response to FOIPA Request Number 1260039-001, *id*. ¶ 33; *see id*., Ex. BB (Letter to

plaintiff from Matthew Hurd, Senior Attorney, OIP, dated March 9, 2015).

### 5.  FOIPA Request Number 1320153-000

Again referring to videotapes, the plaintiff sought information about the chain of custody

and authentication of specific recordings. *Id*. ¶ 34; *see id*., Ex. CC (Freedom of

Information/Privacy Act Request dated January 5, 2015).  The FBI explained that "records

responsive to his request were reviewed and released to him" previously with its response to

FOIPA Request Number 1260039-000. *Id*. ¶ 25; *see id*., Ex. DD (Letter to plaintiff from David

M. Hardy dated January 21, 2015).

### 6.  FOIPA Request Number 1217343 – Referral from the EOUSA

In response to the plaintiff's FOIA request to the EOUSA, the EOUSA located records

that had originated with the FBI, and referred these records to the FBI for its "review, disclosure

determinations, and direct response to [the plaintiff]." *Id*. ¶ 37; *see id*., Ex. EE (Letter to the

plaintiff from Susan B. Gerson, Assistant Director, Freedom of Information & Privacy Staff,

EOUSA).  The FBI reviewed 78 pages of records and released 37 of these pages, having

withheld certain information under Exemptions 6 and 7(C). *Id*. ¶ 38; *see id*., Ex. FF (Letter to

plaintiff from David M. Hardy dated November 12, 2013) at 1.  The OIP affirmed the plaintiff's

administrative appeal "contesting the 41 withheld pages." *Id*. ¶ 39.

### 7.  FOIPA Request Number 1336588 – Referral from the EOUSA

A second referral from the EOUSA consisted of nine pages of records.  *Id.* ¶ 42.  All nine pages were released, though the FBI redacted certain information under Exemptions 6, 7(C) and 7(E).  *Id.* ¶ 43; *see id.*, Ex. JJ (Letter to plaintiff from David M. Hardy dated September 23, 2015).  These pages were numbered Ford-1 through Ford-9.  *Id.* ¶ 54.

### 8.  Supplemental Release

On December 9, 2015, the FBI made a supplemental release of records "[i]n response to the instant action[.]"  *Id.* ¶ 44.  It "added *Vaughn* codes and Bates Stamps to [the] previous releases mentioned in [the] complaint" with respect to FOIPA Request Numbers 1217343-000, 1260039-000 and 1310417-000, and designated the pages Ford-10 through Ford-225.  *Id.*; *see id.* n.14.  In sum, the FBI reviewed 216 pages of records, released 129 of them in full or in part, and withheld certain information under Exemptions 6, 7(C), 7(D), and 7(E).  *Id.*

### 9.  Privacy Act Request to the FBI

Within the request designated FOIPA Number 1260039-000 was the following request for amendment of FBI records:

> U.S. v. John A. Ford
> (09-c-r-846) ND. IL. (Title 5 U.S.C. section 552a(e)(5) - correction of inaccurate record:)  F.B.I. case# 91-ACG-128167
> Correct length of time robbery of u.s. bank lasted (11-20-2007)
> (Including edited rear door camera footage (egress); from original V.H.S.
> Tape to U.S. Attorney trial exhibit #2-51, the total)
> (* new finding).

*Id.*, Ex. C (Freedom of Information/Privacy Act Request dated April 7, 2014).  The FBI denied the request on the ground that the CRS, the system of records where the relevant case file was maintained, is exempt from the amendment provisions of the Privacy Act.  *Id.* ¶ 50.

### C. FOIA Requests to the EOUSA

1. Request 2012-3780

The plaintiff's first FOIA request to the EOUSA sought discovery materials and evidence produced at his criminal trial in the United States District Court for the Northern District of Illinois. *See* Defs.' Mem., Decl. of Vinay J. Jolly ("Jolly Decl."), Ex. A (Freedom of Information/Privacy Act Request dated August 31, 2012). The EOUSA acknowledged its receipt of the request, designated Request 2012-3780, in writing. *See id.*, Ex. B (Letter to plaintiff from Susan B. Gerson, Assistant Director, Freedom of Information & Privacy Staff, EOUSA, dated October 2, 2012). In subsequent correspondence, the plaintiff narrowed his request to include a copy of an arrest report, a "copy/reproduction of <u>optical disk</u> of <u>robbery DVR recording</u> along with all (produced) 'still shots' (photos of actual robbery in discovery)," the photo line-up, and a photo of the plaintiff wearing eyeglasses. *Id.*, Ex. C (Letter from plaintiff dated October 4, 2012) (emphasis in original).

After searching records maintained by the United States Attorney's Office for the Northern District of Illinois, the EOUSA determined that the responsive records originated with the FBI, and, accordingly, the "EOUSA referred [78 pages of] records to the FBI for its review and direct response to the [p]laintiff[.]" *Id.* ¶ 8; *see id.* n.1; *see also id.*, Ex. E (Letter to plaintiff from Susan B. Gerson dated March 29, 2013). The plaintiff appealed this determination to the OIP. *Id.* ¶ 10. His administrative appeal was unsuccessful, however, and the OIP deemed the referral "proper and in accordance with [DOJ] regulations." *Id.*, Ex. J (Letter to plaintiff from Anne D. Work, Senior Counsel, Administrative Appeals Staff, OIP, dated March 25, 2014) at 1. In addition, the OIP found that the EOUSA "conducted an adequate, reasonable search for . . . records" responsive to the plaintiff's FOIA request. *Id.*, Ex. J at 1.

2. Request 2014-0292

In October 2013, the plaintiff submitted a new FOIA request for six specific items:

> #1 A complete copy of original V.H.S. tape[] believed to be evidence item 1 of 8, 1-b-1 barcode 01764903 F.B.I. case - #91CG-128167: Chicago Office of F.B.I. ([]acquired 11-20-2007 – at U.S. Bank) (non-edited, non-padded, preserved evidence item).
> #2 Record of complete chain of custody concerning specifically the original evidence of V.H.S. tape; who edited and produced c-d's (video stills & video movie footage), who authenticated the above described supra.
> #3 Produce color copies of numbered trial exhibits used at trial of robbery.
> #4 Produce copy of discovery c-d movie & video stills, with elapsed time/date visible, (17:26:01—17:28:14) in stills.
> #5 Produce color copy of cropped (non-trial exhibit photo still) shown to jury at closing argument; along with source photo with elapsed time video visible.
> #6 Produce Government witness Danial R. Thomas's robbery packet.

*Id.*, Ex. K (Freedom of Information/Privacy Act Request dated October 28, 2013) at 2 (emphasis in original). The EOUSA assigned this matter Request Number 2014-0292. *See id.*, Ex. L (Letter to plaintiff from Susan B. Gerson dated January 15, 2014). A search of USAO/ILN records yielded no responsive records. *Id.* ¶ 15; *see id.*, Ex. M (Letter to plaintiff from Susan B. Gerson dated March 21, 2014).

The plaintiff's administrative appeal to the OIP was unsuccessful. *See id.* ¶ 18. With respect to Item Numbers 1, 2 and 4, the OIP deemed the EOUSA's search adequate and reasonable in spite of its results. *Id.*, Ex. P (Letter to plaintiff form Sean R. O'Neill, Chief, Administrative Appeals Staff, OIP, dated August 26, 2014) at 1. In addition, the OIP commented that Item Numbers 3, 5 and 6 had been addressed previously in the context of Request 2012-3780 and its referral to the FBI. *Id.*, Ex. P at 1.

### 3. Request 2014-2113

The plaintiff's third FOIA request to the EOUSA was limited to "grand jury transcripts from his criminal case." *Id.* ¶ 19; *see id.*, Ex. Q (Freedom of Information/Privacy Act Request dated April 7, 2014).  The EOUSA denied the request, designated Request 2014-2113, on the ground "that the grand jury material is exempt [from disclosure] under the FOIA and the Federal Rules of Criminal Procedure." *Id.* ¶ 20; *see id.*, Ex. R (Letter to plaintiff from Susan B. Gerson dated May 5, 2014).  The OIP affirmed the EOUSA's determination. *Id.* ¶ 23; *see id.*, Ex. U (Letter to plaintiff from Sean R. O'Neill, OIP, dated August 7, 2014).

### 4. Request 2015-0316

In October 2014, the plaintiff submitted a fourth FOIA request to the EOUSA, "this time for certain FBI evidentiary items from his criminal case," *id.* ¶ 25, such as latent fingerprints, *see id.*, Ex. W (Freedom of Information/Privacy Act Request dated October 29, 2014).  The "EOUSA notified [him] that a search for records in the USAO/ILN . . . revealed that potentially responsive records originated with the [FBI]." *Id.* ¶ 27.  Hence, the "EOUSA referred [five pages of] records to the FBI for its review and direct response to the [p]laintiff[.]" *Id.*; *see id.* n.3; *see also id.*, Ex. Z (Letter to plaintiff from Susan B. Gerson dated August 17, 2015).

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 56 provides that summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  "In FOIA cases, summary judgment may be granted on the basis of agency affidavits if they contain reasonable specificity of detail rather than merely conclusory statements, and if they are not called into question by contradictory evidence in the record or by evidence of agency bad faith." *Judicial Watch, Inc. v.*

*U.S. Secret Serv.*, 726 F.3d 208, 215 (D.C. Cir. 2013) (internal quotation marks omitted)

(quoting *Consumer Fed'n of Am. v. U.S. Dep't of Agric.*, 455 U.S. 283, 287 (D.C. Cir. 2006)).

The agency invoking an exemption to the FOIA has the burden "to establish that the requested

information is exempt." *Fed. Open Mkt. Comm. of Fed. Reserve Sys. v. Merrill*, 443 U.S. 340,

352 (1979); *see U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press,* 489 U.S.

749, 755 (1989); *Elec. Frontier Found. v. U.S. Dep't of Justice*, 739 F.3d 1, 7 (D.C. Cir. 2014);

*Assassination Archives & Research Ctr. v. CIA*, 334 F.3d 55, 57 (D.C. Cir.  2003).  "Ultimately,

an agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or

'plausible.'" *Judicial Watch, Inc. v. U.S. Dep't of Def.*, 715 F.3d 937, 941 (D.C. Cir. 2013)

(quoting *Am. Civil Liberties Union v. U.S. Dep't of Def.*, 628 F.3d 612, 619 (D.C. Cir. 2011));

*Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009) (quoting *Wolf v. CIA*, 473 F.3d 370,

374-75 (D.C. Cir.  2007))**.**

## III.   DISCUSSION

The plaintiff's Privacy Act claim is addressed first, before turning to his objections to the

agencies' refusal to release information under the claimed exemptions.

### A.  The Plaintiff's Privacy Act Claim

The plaintiff seeks amendment of a record, identified by the plaintiff as 91-ACG-128167,

which is maintained in the FBI's CRS, which, as noted *supr*a Part II. A, First Hardy Decl. ¶ 49,

is "an extensive system of records … compiled and maintained by the FBI in the course of

fulfilling its integrated missions and functions as a law enforcement, counterterrorism, and

intelligence agency[.]" *Id.* ¶ 45.  Further, the declarant explains that the relevant record "was

compiled as a result of the FBI's fulfillment of its law enforcement duties associated with [the

plaintiff's] criminal investigation pertaining to a bank robbery," and that the plaintiff "was tried

and convicted of the imputed charges on or about April 14, 2011." *Id.* ¶ 50.

"The Privacy Act regulates the collection, maintenance, use, and dissemination of

information about individuals by federal agencies." *Wilson v. Libby*, 535 F.3d 697, 707 (D.C.

Cir. 2008) (internal quotation marks and citations omitted).  An individual may request access to

and amendment of an agency's records or information pertaining to him in a system of records.

*See* 5 U.S.C. § 552a(d).  That individual may file a civil action against an agency which "makes

a determination . . . not to amend [the] record in accordance with his request." *Id.* §

552a(g)(1)(A).

An agency head may promulgate regulations to exempt a system of records from any part

of the Privacy Act other than subsections (b), (c)(1) and (2), (e)(4)(A) through (F), (e)(6), (7),

(9), (10), and (11), and (i), if the system of records is:

> maintained by an agency or component thereof which performs as
> its principal function any activity pertaining to the enforcement of
> criminal laws, including police efforts to prevent, control, or reduce
> crime or to apprehend criminals . . . , and which consists of . . .
> information compiled for the purpose of a criminal investigation . .
> . and associated with an identifiable individual; or . . . reports
> identifiable to an individual compiled at any stage of the process of
> enforcement of the criminal laws from arrest or indictment through
> release from supervision.

5 U.S.C. § 552a(j)(2).  FBI regulations, for example, exempt the CRS (JUSTICE/FBI-002) from

subsections (d) and (g) of the Privacy Act.  *See* 28 C.F.R. §§ 16.46(f)(4), 16.96(a).  Therefore,

the declarant states, "any responsive CRS records about [the] plaintiff are exempt from access

and amendment under applicable Privacy Act statutory and regulatory authority."  First Hardy

Decl. ¶ 50.  The Court concurs.  CRS records are exempt from the Privacy Act's amendment

provisions, and the plaintiff's Privacy Act claim therefore will be dismissed.  *See Lee v. FBI*, __

F. Supp. 3d __, __, 2016 WL 1225957, at *3 (D.D.C. Mar. 28, 2016).

## B.  The Plaintiff's FOIA Claim

In response to the plaintiff's multiple FOIA requests, the FBI and EOUSA have withheld

records under FOIA Exemptions 3 and 7. Each of these exemptions is considered *seriatim* below.

### 1. Exemption 3

The EOUSA relies on Exemption 3 and Federal Rule of Criminal Procedure 6(e) to

withhold grand jury transcripts requested by the plaintiff. Exemption 3 protects information

"specifically exempted from disclosure by statute  . . . if that statute –

> (i) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue; or
>
> (ii) establishes particular criteria for withholding or refers to particular types of matters to be withheld; and
>
> (B) if enacted after the date of enactment of the OPEN FOIA Act of 2009, specifically cites to this paragraph.

5 U.S.C. § 552(b)(3)(A).

Rule 6(e), which Congress affirmatively enacted, is considered a statute for purposes of

Exemption 3.  *See Fund for Constitutional Gov't v. Nat'l Archives & Records Serv.*, 656 F.2d

856, 867 (D.C. Cir. 1981) ("It is quite apparent that by any definition Fed. R. Crim. P. 6(e) is a

statute.").  This rule bars the disclosure of matters occurring before a grand jury, *see* FED. R.

CRIM. P. 6(e)(2)(B), and "when combined with . . . Exemption 3, [it] prohibits the disclosure of

certain grand jury matters even in the face of a valid FOIA request."  *Boehm v. FBI*, 983 F. Supp.

2d 154, 157 (D.D.C. 2013).  "The relevant inquiry for this Court is whether disclosure of the

information requested would 'tend to reveal some secret aspect of the grand jury's investigation,

such matters as the identities of witnesses or jurors, the substance of testimony, the strategy or

direction of the investigation, the deliberations or questions of jurors, and the like.'" *Lopez v. Dep't of Justice*, 393 F.3d 1345, 1349 (D.C. Cir. 2005) (quoting *Senate of the Com. of Puerto Rico on Behalf of Judiciary Comm. v. U.S. Dep't of Justice*, 823 F.2d 574, 582 (D.C. Cir. 1987)) (internal quotation marks omitted).

The EOUSA explains that Exemption 3 and Rule 6(e) are invoked to withhold grand jury transcripts "because release of this information would reveal the identity of a grand jury witness, the scope of the grand jury, and the direction of the investigation by providing the source of evidence and evidence produced before the grand jury." Jolly Decl. ¶ 33.  In other words, if the plaintiff were to have access to this information, he would learn "the scope of the grand jury's investigation" from "where the government sought . . . evidence to develop its case, how the government developed its case, and [on whom] the government relied . . . to develop elements of crimes." *Id*.  Because none of the information is "segregable without revealing . . . protected information," the grand jury transcripts are withheld in their entirety. *Id*. ¶ 34.

The plaintiff nevertheless demands the release of "Grand Jury transcript concerning witness Thomas (and others) testimony." Pl. Ford's Reply/Aff./Mem. of Fact: Issues #1-10 in Opp'n to Defs.' Mot. for Summ. J., ECF No. 25 ("Pl.'s Opp'n") at 8.  According to the plaintiff, "[t]he transcript likely reveals perjury" because one witness "has shown a clear pattern of changing his testimony to fill the needs of P.D./FBI/U.S. Attorneys." *Id*.  Specifically, the plaintiff claims, the "AUSA . . . produced false testimony from [the witness] & used empty bank lobby photos to conceal that [the] witness was so distracted during most of [the] event[,] and in fact became so distracted . . . that he walked away from [the] bandit . . . and stood 50 feet away while not facing [the] bandit." *Id*. at 9. Further, he claims that witnesses' "pre-trial & trial testimony is likely to . . . differ from their grand jury testimony[.]" *Id*. at 10.  The plaintiff

claims to have "made a compelling showing that transcripts are needed to avoid injustice in the 7th [Circuit] & that plaintiff['s] interest[] in proving his factual innocence outweighs any privacy or law enforcement interest the government has in this case[.]" *Id*. at 14.

Regardless of whether grand jury testimony might support the plaintiff's claim of innocence, the EOUSA adequately demonstrates that release of the grand jury transcripts impermissibly would reveal the identity of a witness, evidence before the grand jury and the source of that evidence. Its decision to withhold grand jury information under Exemption 3 is proper. *See, e.g., Thelen v. U.S. Dep't of Justice*, __ F. Supp. 3d __, __, 2016 WL 1048772, at *3 (D.D.C. Mar. 14, 2016) (withholding name of a grand jury witness and other information from which the witness's name could be ascertained); *Adionser v. Dep't of Justice*, 811 F. Supp. 2d 284, 296 (D.D.C. 2011) (withholding information that would reveal scope of grand jury and direction of investigation by providing targets' identities, source of evidence, and evidence actually produced before grand jury), *aff'd in part sub nom. Adionser v. U.S. Dep't of Justice*, No. 11-5093, 2012 WL 5897172 (D.C. Cir. Nov. 5, 2012).

### 2. Exemption 7[2]

The FBI has withheld documents responsive to the plaintiff's multiple requests pursuant to various subsections of FOIA Exemption 7. This exemption protects from disclosure information compiled for law enforcement purposes, but only to the extent that disclosure reasonably could be expected to result in an enumerated harm. 5 U.S.C. § 552(b)(7); *see FBI v. Abramson*, 456 U.S. 615, 622 (1982). "To show that the disputed documents were compiled for

---

[2] The FBI's declarant explains that the FBI's "practice . . . is to assert Exemption 6 in conjunction with Exemption 7(C)." First Hardy Decl. ¶ 61 n.18. Since all of the responsive FBI records were compiled for law enforcement purposes, the FBI's justification for withholding information about third parties under Exemption 7(C) suffices and Exemption 6 need not be discussed. *See, e.g., Hammouda v. U.S. Dep't of Justice Office of Info. Policy*, 920 F. Supp. 2d 16, 24 (D.D.C. 2013).

law enforcement purposes, the [agency] need only establish a rational nexus between the investigation and one of the agency's law enforcement duties and a connection between an individual or incident and a possible security risk or violation of federal law." *Blackwell v. FBI*, 646 F.3d 37, 40 (D.C. Cir. 2011) (internal quotation marks and citations omitted).

The FBI's declarant explains that the Bureau "is the primary investigative agency of the federal government with authority and responsibility to investigate all violations of federal law not exclusively assigned to another agency, to conduct investigations and activities to protect the United States and its people from terrorism and threats to national security, and [to] further the foreign intelligence objectives of the United States." First Hardy Decl. ¶ 58. Pursuant to this authority, the declarant states, the FBI conducted a "criminal investigation of [the p]laintiff for a bank robbery, in violation of 18 USC § 2113A," and the relevant investigative file was compiled during that investigation. *Id*. Thus, the FBI easily demonstrates, and the plaintiff does not dispute, that the responsive records were compiled for law enforcement purposes and fall within the scope of Exemption 7.

a. Exemption 7(C)

The FBI relies on Exemption 7(C) to withhold from records responsive to the plaintiff's requests the names of and identifying information about third parties appearing in the responsive records, including FBI Special Agents and support personnel, First Hardy Decl. ¶ 63; non-FBI federal government personnel, *id*. ¶ 65; local law enforcement personnel, *id*. ¶ 66; third parties who were interviewed by or provided information to local law enforcement personnel during the course of the investigation, *id*. ¶ 67; commercial and financial institution employees who cooperated with the FBI, *id*. ¶ 69; third parties of investigative interest to the FBI, *id*. ¶ 70; third parties with criminal records, *id*. ¶ 71; third parties who were merely mentioned in the investigative file, *id*. ¶ 72; and the victim of a crime, *id*. ¶ 73. "'[I]dentifying information' may

include, but is not limited to, dates of birth, social security numbers, addresses, telephone numbers, and/or other personal information." *Id*. ¶ 63 n.19.

Exemption 7(C) authorizes an agency to withhold law enforcement records if disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). In determining whether this exemption applies to particular information, the Court must balance an individual's interest in privacy against the public interest in disclosure. *See Am. Civil Liberties Union v. U.S. Dep't of Justice*, 655 F.3d 1, 6 (D.C. Cir. 2011). The privacy interest at stake belongs to the individual, not the government agency, *see Reporters Comm.*, 489 U.S. at 763-65, and an individual has "a strong interest in not being associated unwarrantedly with alleged criminal activity," *Stern v. FBI*, 737 F.2d 84, 91-92 (D.C. Cir. 1984). "[T]he only public interest relevant for purposes of Exemption 7(C) is one that focuses on 'the citizens' right to be informed about what their government is up to.'" *Davis v. U.S. Dep't of Justice*, 968 F.2d 1276, 1282 (D.C. Cir. 1992) (quoting *Reporters Comm.*, 489 U.S. at 773). It is a FOIA requester's obligation to articulate a public interest sufficient to outweigh an individual's privacy interest, and the public interest must be significant. *See Nat'l Archives and Records Admin. v. Favish*, 541 U.S. 157, 172 (2004).

Of all the information withheld under Exemption 7(C), the plaintiff expresses an interest only in the identities of the FBI agent or agents who had control of original video recordings and who edited, produced or authenticated particular trial exhibits. *See* Pl.'s Opp'n at 4-5, 11-12 (regarding exhibits identified by plaintiff as "#1-51 & 2-51"). The plaintiff suggests that the trial exhibits derived from the original video recordings were edited in such a way as to distort the duration of the robbery, *see id*. at 4, and to "exclude[] critical egress footage," *id*. at 5. He further contends that certain evidence, including still photographs of a rear door and the location

of a latent print, was "not made available to [him] at trial," *id*. at 6, and that other evidence,

including a crime scene photo of a latent print, was "not turned over . . . until 8 days before

trial," *id*. at 4.  For these reasons, the plaintiff asserts that he did not receive a fair trial, *see, e.g.,*

*id*. at 4, 6, because the prosecution deliberately withheld evidence in violation of *Brady v.*

*Maryland*, 373 U.S. 83 (1963), "as a means to secure a conviction," Pl.'s Opp'n at 10.  The

Court surmises, then, that the plaintiff argues for the release of third party information on the

ground that there is a significant public interest in revealing the misconduct of the prosecutor(s)

and FBI agent(s) who played a role in effecting his criminal conviction.  *See, e.g., id*. at 8, 11.

The argument is not persuasive.

The plaintiff fails to recognize that the government's obligations in a FOIA case are not

the same as its obligations in a criminal case.  *See, e.g., Mingo v. U.S. Dep't of Justice*, No. 08-

2197, 2009 WL 2618129, at *2 (D.D.C. Aug. 24, 2009) (rejecting argument that agency

deliberately withheld exculpatory information in violation of the Fifth Amendment because the

government's constitutional obligation under *Brady* to disclose exculpatory material to criminal

defendant is not coextensive with the agency's statutory obligations under the FOIA).  Nor can

the plaintiff establish that the "indirect public purpose" of "ensuring fair criminal trials" can, "in

the absence of compelling evidence of agency misconduct, . . . outweigh the substantial privacy

interests" of the third parties.  *Johnson v. U.S. Dep't of Justice*, No. CIV. A. 85-714, 1991 WL

251940, at *1 (D.D.C. Nov. 13, 1991).  At most, release of the information the plaintiff seeks

might reveal "a single, garden-variety act of misconduct [which] would not serve the FOIA's

purpose of showing what the [g]overnment is up to."  *Oguaju v. United States*, 288 F.3d 448, 451

(D.C. Cir. 2002), *cert. granted, judgment vacated sub nom. Oguaju v. U.S. Marshals Serv.*, 541

U.S. 970 (2004), *and judgment reinstated,* 378 F.3d 1115 (D.C. Cir. 2004) (internal quotation

marks and citation omitted).  Absent a showing by the plaintiff of a public interest to outweigh the third parties' privacy interest, the FBI's decision to withhold the identities of the FBI agent or agents under Exemption 7(C) is appropriate.

The plaintiff does not seek the dates of birth, addresses, social security numbers or telephone numbers of any FBI Special Agent or local police department personnel, *see* Pl.'s Opp'n at 5, and he fails even to mention the other third parties whose identities the FBI protects. The Court therefore treats as conceded the FBI's arguments for withholding all the other third party information under Exemption 7(C).  *See, e.g., Brillhart v. FBI*, 869 F. Supp. 2d 12, 15 (D.D.C. 2012) ("Plaintiff does not challenge, and thus concedes, defendant's properly documented reasons for redacting information from the 54 released pages under FOIA exemptions 3, 6, 7(C) and 7(E)."); *Maydak v. U.S. Dep't of Justice*, 254 F. Supp. 2d 23, 41 (D.D.C. 2003) (where plaintiff did not challenge FBI's justification for withholding information under Exemptions 7(C) and 7(D), he "concedes the issue").  Even if the plaintiff had not conceded these arguments, the Court finds that FBI adequately justified its determinations.  *See SafeCard Servs., Inc. v. Sec. & Exch. Comm'n*, 926 F.2d 1197, 1206 (D.C. Cir. 1991) (holding "categorically that, unless access to the names and addresses of private individuals appearing in files within the ambit of Exemption 7(C) is necessary in order to confirm or refute compelling evidence that the agency is engaged in illegal activity, such information is exempt from disclosure"); *see also Blackwell*, 646 F.3d at 41 ("FOIA ordinarily does not require disclosure of law enforcement documents (or portions thereof) that contain private information.").

b. Exemption 7(D)

The FBI relied on Exemption 7(D) to withhold "information provided to [it] by a local law enforcement agency." First Hardy Decl. ¶ 74.  Exemption 7(D) protects from disclosure those records or information compiled for law enforcement purposes that

> could reasonably be expected to disclose the identity of a confidential source . . . [who] furnished information on a confidential basis, and, in the case of a record or information compiled by criminal law enforcement authority in the course of a criminal investigation . . ., information furnished by a confidential source.

5 U.S.C. § 552(b)(7)(D).  There is no general "presumption that a source is confidential within the meaning of Exemption 7(D) whenever [a] source provides information [to a law enforcement agency] in the course of a criminal investigation."  *U.S. Dep't of Justice v. Landano*, 508 U.S. 165, 181 (1993).  Rather, a source's confidentiality must be determined on a case-by-case basis. *Id*. at 179-80.  "A source is confidential within the meaning of [E]xemption 7(D) if the source 'provided information under an express assurance of confidentiality or in circumstances from which such an assurance could be reasonably inferred.'"  *Williams v. FBI*, 69 F.3d 1155, 1159 (D.C. Cir. 1995) (per curiam) (quoting *Landano*, 508 U.S. at 170-74).  "An 'implied' assurance may be inferred from evidence showing the circumstances surrounding the imparting of the information, including the nature of the criminal investigation and the confidential source's relationship to the target."  *Willis v. U.S. Dep't of Justice*, 581 F. Supp. 2d 57, 77 (D.D.C. 2008) (citing *Landano*, 508 U.S. at 171-72).

The FBI declarant explains that Exemption 7(D) was invoked to withhold "information provided to [it] by a local law enforcement agency" that "is directly related to the investigation of [p]laintiff's bank robbery and how the . . . agency gleaned specific information leading to [p]laintiff's arrest."  First Hardy Decl. ¶ 74.  The declarant further explains that the FBI

frequently works with and solicits information from local law enforcement agencies in connection with criminal investigations. *See id.* ¶¶ 74-75. "Inherent in [such] cooperative effort[s] is the mutual understanding that certain information provided by . . . local law enforcement agencies will be held in confidence . . . and not released pursuant to FOIA and Privacy Act requests." *Id.* ¶ 75. These agencies sometimes "request that the FBI not disclose some information or parts of investigations in order to not publicly disclose their capabilities." *Id.* ¶ 74. In this case, the local law enforcement agency "has requested [that the information] not be made public." *Id.* ¶ 74.

If the FBI were to disclose information obtained from local law enforcement agencies, "cooperation between the FBI and these agencies would be greatly diminished, causing significant detriment to effective law enforcement." *Id.* ¶ 75. Further, the declarant states, "[t]he degradation of perceived trust in the FBI . . . would seriously impair the FBI's effectiveness in assisting with or participating in future investigations with local law enforcement agencies." *Id.* ¶ 74.

The law is well-established that a local law enforcement agency can be a source for purposes of Exemption 7(D), *see Lesar v. U.S. Dep't of Justice*, 636 F.2d 472, 491 (D.C. Cir. 1980) (holding that "the word 'source' in Exemption 7(D) includes not only individuals such as private citizens and paid informants but also entities such as the state and local law enforcement agencies here involved"), and the information it provides to the FBI may be withheld under Exemption 7(D), *see Weisberg v. U.S. Dep't of Justice*, 745 F.2d 1476, 1492 (D.C. Cir. 1984) (finding that "confidential information supplied by foreign and local law enforcement agencies is clearly within the purview of Exemption 7(D)"). Based on the declarant's explanation of the cooperative arrangements the FBI maintains with local law enforcement agencies, and this local

law enforcement agency's specific request that the information it provided not be disclosed, the FBI adequately demonstrates that its reliance on Exemption 7(D) is proper. *See, e.g., Beard v. Dep't of Justice*, 917 F. Supp. 61, 63 (D.D.C. 1996) (where "the [Metropolitan Police Department] does not agree to [the FBI's request to] release the information, the exemption provided under 7(D) must be honored"); *Sluby v. U.S. Dep't of Justice*, No. CIV.A. 86-1503, 1987 WL 10509, at *5 (D.D.C. Apr. 30, 1987) (where "an understanding of confidentiality exists between federal and local law enforcement agencies based on a general course of dealing and that this understanding was present," FBI properly withheld information under Exemption 7(D)).

        c. Exemption 7(E)

The FBI withheld certain internal communications information and bank video-surveillance footage under Exemption 7(E). This exemption protects law enforcement records, the release of which "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E).

Under this exemption, the FBI withheld "its internal security phone number, internal e-mail address and/or non-public intranet web address." First Hardy Decl. ¶ 77. The declarant explains that release of such information "could allow individuals under investigation to exploit the FBI's Information Technology system to gain unauthorized access to, view and manipulate data on, or otherwise interfere with the FBI's unclassified but  non-public internet protocol," and they could use the information "to circumvent the law [and] to disrupt [the Bureau's] official business." *Id.* It also withheld "information pertaining to the types and dates of investigations," that is, whether an investigation is preliminary or full and the date of its initiation. *Id.* ¶ 78. If

22

this information were disclosed, the declarant explains that individuals could "know the types of activities . . . trigger[ing] a full investigation as opposed to a preliminary investigation, and the particular dates that the investigation covers." *Id.* Armed with knowledge of activity warranting a preliminary or full investigation, individuals could "adjust their conduct to avoid detection," and in this way "impede the FBI's effectiveness." *Id.*

The plaintiff fails to address these arguments, and the Court treats them as conceded. At any rate, the Court finds that the FBI's justification for withholding this information is adequate. *See Am. Civil Liberties Union Found. of Massachusetts v. FBI*, No. 14-CV-11759, 2016 WL 4411492, at *6 (D. Mass. Aug. 17, 2016) (approving the redaction of information "show[ing] what activities trigger a full investigation as opposed to a preliminary investigation or assessment, as well as what types of cases the FBI is focusing on"); *Tracy v. U.S. Dep't of Justice*, No. CV 15-655, 2016 WL 3248185, at *9 (D.D.C. June 10, 2016) (withholding internal FBI website address on the ground that its "disclosure . . . would increase the risk of cyberattacks"), *appeal filed*, No. 16-5187 (D.C. Cir. June 28, 2016).

The plaintiff focuses on the FBI's decision to withhold "in its entirety responsive video containing bank surveillance." First Hardy Decl. ¶ 79. The declarant explains the rationale for withholding this item as follows:

> While it is well-known that most banks have surveillance cameras, the exact locations of the cameras used to record such surveillance is not. The FBI, state, and local law enforcement agencies frequently use bank surveillance footage[] to aid in the investigation and eventual prosecution of individuals involved in bank robberies or nefarious incidents in or around banks. Release of the actual surveillance from this, and any other bank robbery, would allow criminals to determine the exact locations of the cameras on particular banks, making those banks more vulnerable to bank robberies and/or other criminal activity, since criminals would know how to circumvent the surveillance system by avoiding placing themselves within the camera reach.

*Id.*

The FBI offers further support for its position with an explanation that "[b]ank surveillance footage often consists of views from each camera in the bank, and it is often analyzed during the course of any subsequent law enforcement investigation of a bank robbery[.]"  Reply in Support of Def.'s Mot. for Summary Judgment, ECF No. 29, Second Decl. of David M. Hardy ("Second Hardy Decl.") ¶ 6.  Its declarant states:

> Even if the still photo exhibits . . . show where a camera is located, any video footage would reveal the exact angle of each camera, the surveillance coverage of each camera, and the number of cameras within the bank.  Additionally, the video footage would reveal details about the way each camera filmed its surveillance area (e.g. whether the camera(s) are panned or zoomed at specific times and/or at which resolution level).  Accordingly, the FBI maintains its position that release of any of the bank surveillance footage would provide criminals the necessary information to circumvent the very purpose of a bank surveillance system, making banks more vulnerable to bank robberies and/or other criminal activity, and therefore circumvent the law.

*Id.*

The plaintiff responds that the bank's cameras not only "are meant to be visible as an added deterant [sic] in this setting," but also are placed in such a way as to "cover all areas of [the] bank lobby."  Pl.'s Opp'n at 3.  He maintains a need for a copy of the complete video recording, still images derived therefrom, and other crime scene photos, arguing that he was deprived of a fair trial because these items had not been provided to him previously.  *See id.* at 3-4.  The plaintiff's arguments are simply not persuasive.  Even if some cameras are "visible" as a deterrent, other cameras may be placed at angles or in areas unknown to the public and disclosure of this information could, as the FBI points out, "provide criminals the necessary information to circumvent the very purpose of a bank surveillance system, making banks more

vulnerable to bank robberies and/or other criminal activity, and therefore circumvent the law."
Second Hardy Decl. ¶ 6

In short, the Court concurs with the FBI.  *See Malloy v. U.S. Dep't of Justice*, 457 F.
Supp. 543, 545 (D.D.C. 1978) (concluding "that release of information about bait money, bank
security devices, investigative leads, and the bank layout, would result in the disclosure of
investigative techniques and procedures not commonly known to the public").  The FBI's
decision to withhold bank surveillance footage under Exemption 7(E) is proper.

### d.  Segregability

"Even when FOIA exemptions apply, '[a]ny reasonably segregable portion of a record
shall be provided to any person requesting such record after deletion of the portions which are
exempt.'"  *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1116 (D.C. Cir. 2007) (quoting 5
U.S.C. § 552(b)).  It is the Court's obligation to "make specific findings of segregability
regarding the documents to be withheld," *id*. (citations omitted), "even if the issue has not been
specifically raised by the FOIA plaintiff," *Trans-Pacific Policing Agreement v. U.S. Customs
Serv.*, 177 F.3d 1022, 1028 (D.C. Cir. 1999); *see also PHE, Inc. v. Dep't of Justice*, 983 F.2d
248, 252 (D.C. Cir. 1993) ("[A] district court clearly errs when it approves the government's
withholding of information under the FOIA without making an express finding on
segregability.").

The FBI's declarant avers that "each responsive page was individually examined to
identify non-exempt information that could be reasonably segregated from exempt information,"
and that "[a]ll segregable information has been released to plaintiff."  First Hardy Decl. ¶ 81.
Similarly, the EOUSA's declarant avers that "[a]ll of the withheld records fall within [Exemption
3] and are not segregable without revealing . . . protected information."  Jolly Decl. ¶ 34. The

plaintiff's opposition is silent on the matter of segregability.  Based on the defendants' supporting declarations, the Court concludes that the FBI and the EOUSA adequately specifed "which portions of the document[s] are disclosable and which are allegedly exempt."  *Vaughn v. Rosen*, 484 F.2d 820, 827 (D.C. Cir. 1973).

## III. CONCLUSION

The defendants have demonstrated that the FBI and the EOUSA conducted searches reasonably calculated to locate records responsive to plaintiff's many FOIA requests and that they properly withheld information under Exemptions 3, 7(C), 7(D), and 7(E).  They have shown that no material fact is genuinely disputed as to their compliance with the FOIA, and their motion for summary judgment will be granted.

An Order consistent with this Memorandum Opinion is issued separately.


DATE: September 21, 2016          /s/ *Beryl A. Howell*

                                  BERYL A. HOWELL
                                  United States District Judge